UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

KIM SUANNE SHAFFER,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

Case No. 1:11-cv-80

Honorable Joseph G. Scoville

**OPINION**

        This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits (DIB) and supplemental security income benefits (SSI). Plaintiff filed her applications for benefits on April 23, 2007, alleging a December 16, 2005 onset of disability.[1] (A.R. 134-45). Her claims for DIB and SSI benefits were denied on initial review. (A.R. 73-81). On September 28, 2009, she received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 28-69). On October 27, 2009, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 15-23). On November 16, 2010, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

---

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, May 2007 is plaintiff's earliest possible entitlement to SSI benefits.

On January 20, 2011, plaintiff filed her complaint seeking judicial review of the Commissioner's decision denying her claims for DIB and SSI benefits. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment. (docket # 8). The two issues raised by plaintiff are as follows:

1. Substantial evidence does not support the finding of the ALJ because he unreasonably dismisses key psychological evidence from Dr. Greenbaum; and

2. The ALJ failed to meet his burden at step 5 of the sequential evaluation because his RFC assessment does not address Plaintiff's absenteeism and need to be off task.

(Statement of Errors, Plf. Brief at 1, docket # 10, ID# 500). Upon review, the Commissioner's decision will be affirmed.

### **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any

fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## **Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from December 16, 2005, through the date of the ALJ's decision. Plaintiff had not engaged in substantial gainful activity on or after December 16, 2005. (A.R. 17). The ALJ found that plaintiff had the following severe impairments: "degenerative disc disease lumbar and cervical spine, obesity, and depression." (A.R. 17-18). Plaintiff did not have an impairment or combination

of impairments which met or equaled the requirements of the listing of impairments. (A.R. 18). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of sedentary work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to occasionally lift 10 pounds, sit for approximately six hours, stand or walk for approximately two hours in an eight hour workday with normal breaks; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling. She should avoid concentrated exposure to extreme cold, extreme heat, and humidity. Work limited to simple, routine, and repetitive tasks in a work environment free of fast paced production requirements; involving only simple work-related decisions; with few, if any, work place changes (20 CFR 404.1567(a) and 416.967(a)).

(A.R. 19). The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible. (A.R. 19-21). Plaintiff was unable to perform her past relevant work. (A.R. 22). Plaintiff was 44-years-old as of the date of her alleged onset of disability and 48-years-old as of the date of the ALJ's decision. Thus, at all times relevant to her claims for DIB and SSI benefits, plaintiff was classified as a younger individual. (A.R. 22). Plaintiff has at least a high-school education and is able to communicate in English. (A.R. 22). The transferability of job skills was not material to a disability determination. (A.R. 22). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 5,000 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 61-63). The ALJ found that this constituted a significant number of jobs. Using Rule 201.21 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (A.R. 22-23).

**1.**

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because "he unreasonably dismisse[d] key psychological evidence from Dr. Greenbaum." (Plf. Brief at 8). Plaintiff argues that the ALJ should have treated Psychologist Irwin Greenbaum's opinions as if they were the opinions of a treating physician, and provided a better explanation why Greenbaum's opinions were entitled to "no weight." (Plf. Brief at 8-10; Reply Brief at 1-4). Upon review, the court finds no error.

Plaintiff claims a December 16, 2005 onset of disability. She has no history of hospitalization, therapy, or extensive treatment for depression or any other mental impairment. Plaintiff's family physicians provided her with prescriptions for Effexor "off and on" for a number of years (A.R. 41, 244, 259, 261, 337), a 2005 trial of Zoloft (A.R. 251-52, 254, 256), and a 2009 trial of Wellbutrin (A.R. 41).

Plaintiff's attorney arranged for a consultative examination by Psychologist Greenbaum. On September 16, 2009, twelve days before plaintiff's administrative hearing, Greenbaum conducted his examination (A.R. 308-12) and completed a "Medical Assessment of Ability to do Work-related Activities (Mental)" report in support of plaintiff's claims for DIB and SSI benefits (A.R. 313-14). Greenbaum provided a diagnosis of major depression, single episode, moderate, and gave plaintiff a GAF score of 40. He finished his report with the following statement: "Given the severity and refractory nature of Ms. Shaffer's psychiatric impairments she is viewed as not capable of engaging in meaningful employment at this time or in the foreseeable future." (A.R. 312). Incredibly, based solely on the September 18, 2009 session, Greenbaum provided an opinion asserting that since "December 2005" plaintiff had no ability to relate to co-workers, deal with the

public, interact with supervisors, deal with work stresses, function independently, maintain attention and concentration, understand, remember and carry out detailed or complex instructions, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. (A.R. 313-14). In all other areas, Greenbaum rated plaintiff's abilities as "poor." (*Id.*).

Plaintiff returned to Greenbaum's office two days before her hearing. This second session was the basis of plaintiff's testimony that Greenbaum was her "treating" psychologist. (A.R. 41). Greenbaum recorded plaintiff's subjective complaints and gave her a GAF score of 40. (A.R. 465-66). On October 3, 2009, Greenbaum again recorded plaintiff's complaints and gave her a GAF score of 42. (A.R. 464).

It is pellucid that Greenbaum's opinions are those of a non-treating, consultative examiner and not those of a treating source. The purpose of the "treating physician rule" is to give more weight to the medical opinions expressed by physicians who have had a long-term treatment relationship with the claimant. "[A] medical professional who has dealt with the claimant and [her] maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined the claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *see Rogers v. Commissioner*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Social security regulations define a "treating source" as a physician or other acceptable medical source[2] who has had an "ongoing treatment relationship" with the claimant:

---

[2]"Licensed or certified psychologists" are acceptable medical sources. *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Thus, in an appropriate case, the medical opinion of a treating psychologist is entitled to deference under the "treating physician" rule. *See, e.g.*, *Bowen v. Commissioner*, 478 F.3d 742 (6th Cir. 2007).

> *Treating source* means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). . . . We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.

20 C.F.R. §§ 404.1502, 416.902; *see Coldiron v. Commissioner*, 391 F. App'x 435, 442 (6th Cir. 2010). Whether a psychologist or physician is a "treating source" is determined as of the date the opinions at issue are supplied. *See Karger v. Commissioner*, 414 F. App'x 739, 744 (6th Cir. 2011); *Kornecky v. Commissioner*, 167 F. App'x 496, 506 (6th Cir. 2006). Here, Greenbaum did not have any ongoing treatment relationship with plaintiff on the date he rendered his opinions. Greenbaum's two after-the-fact counseling sessions with plaintiff could not, and did not, transform his September 16, 2009 opinions into treating source opinions. Greenbaum was not a treating source at any time relevant to plaintiff's claims for DIB and SSI benefits. *See Kornecky v. Commissioner*, 167 F. App'x at 506. Because Greenbaum was not a treating source, the ALJ was "not [] under any special obligation to defer to [his] opinion[s] or to explain why he elected not to defer to [them]." *Karger*, 414 F. App'x at 744.

The ALJ found that the extreme restrictions Greenbaum suggested were entitled to no weight:

> Regarding alleged symptoms from depression, in July 2007, State agency psychologist reviewed the medical evidence to assess psychological status. Claimant was being treated by her physician for depression and reported increased stress. Statements in file show [that] claimant handles stress just fine with anti-depressants. She handles finances, grocery shops,

and prepares simple meals. Therefore, the psychologist opined her depression was not a "severe" impairment (Ex 1F)[A.R. 226-39].

There is no evidence of psychiatric hospitalization, group or individual therapy, and her medications have been minimal. Claimant was referred to Dr. Greenbaum by her attorney for evaluation in September 2009. Dr. Greenbaum is of the opinion that, beginning December 2005, claimant has no ability to relate to co-workers, deal with public, deal with work stresses, and maintain attention and concentration. She has poor ability to understand, remember, and carry out simple job instructions and no ability to behave emotionally stable, relate predictably, or demonstrate reliability. She is unable to manage benefits. He assigned claimant with a Global Assessment of Functioning (GAF) of 40 which would indicate major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (DSM - IV pg. 32) (Ex 14F, 15F)[A.R. 308-14]. This opinion is not supported by other physician opinions in file. Further, it is inconsistent with claimant's activities. In June 2007, her activities of daily living included getting dressed, watching television, reading the paper, reading to her granddaughter, sitting outside, clearing papers around house, wiping the table, getting the mail, and paying the bills. She leaves the house alone, drives, and goes shopping. She visits with others one or two times a week (Ex 4E)[A.R. 189-96]. I give no weight to this evaluation performed solely to build a disability case.

On October 3, 2009, claimant returned to Dr. Greenbaum and reported an increase in symptoms since her Social Security hearing. She reportedly felt panicky during the hearing and she was unable to concentrate or focus. She reported having dizzy spells and numbness in extremities that make[] her fearful to drive. Although she has been taking her medication, she does not get more than a few hours sleep. Dr. Greenbaum's treatment plan included reducing her depression so that she does not report suicidal ideation (Ex 25F)[A.R. 464-66]. During the hearing, I observed claimant to be uncomfortable while she sat and stood. However, at no time during the hearing I got the impression that she had difficulty being attentive. She did not need prompts. She followed the proceedings. Her answers were logical and appropriate.

In summary, it is claimant's assertion that she is primarily disabled due to back pain and limitation. She went to follow-up physical therapy. Since September 2007, she has not been physically restricted by her surgeon or primary care physician. It was not until August 2009 that she was given steroid injection. No physician has suggested she requires additional surgery. The state agency physician's determination has indicated that claimant is partially credible and that she retains the ability to perform a reduced range of sedentary work. In light of the medical evidence and hearing testimony, I have based my residual functional capacity on Exhibit 12F [A.R. 295-302].

Through September 2009, claimant reports history of depression but she has not requested mental help and no physician recommended psychological therapy. The evidence established that Dr. Greenbaum's opinions are out of line with the treatment of symptoms in claimant's

-8-

>medical file. The State agency psychologist's determination indicated that claimant's depression imposed only mild limitation of functioning. However, the State agency psychologist has not met the claimant or listened to hearing testimony. In giving claimant the benefit of every doubt, I have included the nonexertional limitations of simple, routine, and repetitive tasks in a work environment free of fast paced production requirements; involving only simple work-related decisions; with few, if any, work place changes to the residual functional capacity.

(A.R. 21).

There is "nothing fundamentally wrong with a lawyer sending a client to a doctor." *Blankenship v. Bowen*, 874 F.2d 1116, 1122 n.8 (6th Cir. 1989). However, it was entirely appropriate for the ALJ to consider the fact that Greenbaum had examined plaintiff on a referral from plaintiff's counsel for the purpose of generating evidence in support of her claims for SSI and DIB benefits. *See DeVoll v. Commissioner*, No. 99-1450, 2000 WL 529803, at * 1 (6th Cir. 2000); *Pentecost v. Secretary of Health & Human Servs.*, No. 89-5014, 1989 WL 96521, at * 1 (6th Cir. Aug. 22, 1989); *see also Gilmore v. Astrue*, No. 2:10-54, 2011 WL 2682990, at * 8 (M.D. Tenn. July 11, 2011).

Greenbaum's opinions on issues reserved to the Commissioner were entitled to no weight. The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Even a treating physician's opinion that a patient is disabled is not entitled to any special significance. *See Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the

requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Psychologist Greenbaum's regurgitations of plaintiff's subjective complaints were entitled to no weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all."). Greenbaum's GAF scores were entitled to no weight. *See Kornecky v. Commissioner*, 167 F. App'x at 511. "GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations." *White v. Commissioner*, 572 F.3d 272, 276 (6th Cir. 2009). A GAF score is a subjective rather than an objective assessment. *Id*. "GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *see Kornecky*, 167 F. App'x at 503 n.7. The DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS' (DSM-IV's) explanation of GAF scale indicates that "a score may have little or no bearing on the subject's social

and occupational functioning."[3] *Kornecky*, 167 F. App'x at 511; *see Oliver v. Commissioner*, 415 F. App'x 681, 684 (6th Cir. 2011).

Judicial review of the Commissioner's final administrative decision does not encompass re-weighing the evidence. *Mullins v. Secretary of Health & Human Servs.*, 680 F.2d 472 (6th Cir. 1982); *Reynolds v. Commissioner*, 424 F. App'x 411, 414 (6th Cir. 2011); *Vance v. Commissioner*, 260 F. App'x 801, 807 (6th Cir. 2008). "In formulating a residual functional capacity, the ALJ evaluates all the relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Commissioner*, No. 10-3820, 2012 WL 616661, at * 2 (6th Cir. Feb. 27, 2012). Here, the ALJ considered Psychologist Greenbaum's opinions, determined that they were inconsistent with the administrative record, and found that they were entitled to no weight. Plaintiff's disagreement with the weight the ALJ found was appropriate for Greenbaum's opinions does not provide a basis for overturning the Commissioner's decision.

**2.**

Plaintiff argues that the ALJ "failed to meet his burden at step 5 of the sequential analysis because his RFC assessment [did] not address the Plaintiff's absenteeism and need to be off task." (Plf. Brief at 11). Plaintiff's argument is based on her attorney's questions to the VE asking him to assume a hypothetical person whose mental impairments would cause her to miss more than 2.5 days of work per month and would require unscheduled work breaks. (Plf. Brief at 11-12; Reply

---

[3]"Significantly, the SSA has refused to endorse the use of the GAF scale." *Bennett v. Commissioner*, No. 1:07-cv-1005, 2011 WL 1230526, at * 3 (W.D. Mich. Mar. 31, 2011). GAF scores "have no direct correlation to the severity requirements of the mental disorder listings." *DeBoard v. Social Security Admin.*, 211 F. App'x 411, 415 (6th Cir. 2006).

Brief at 4-5) (citing A.R. 63-66). This argument does not provide a basis for disturbing the Commissioner's decision.

RFC is an administrative finding of fact reserved to the Commissioner.[4] *Coldiron v. Commissioner*, 391 F. App'x at 439. RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. §§ 404.1545, 416.945; *see Collins v. Commissioner*, 357 F. App'x 663, 668 (6th Cir. 2009). The ALJ found that plaintiff retained the RFC for a range of sedentary work, with mental impairments limiting her to "simple, routine, and repetitive tasks in a work environment free of fast paced production requirements; involving only simple work-related decisions; with few, if any, work place changes." (A.R. 19). The ALJ found that plaintiff's testimony claiming a greater degree of functional limitation was not credible. (A.R. 19-22). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987); *see also Reynolds v. Commissioner*, 424 F. App'x at 417. It is the ALJ's function to determine credibility issues. *See*

---

[4]"Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that she is not engaged in substantial gainful activity. Next, the claimant must demonstrate that she has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

The administrative finding of a claimant's RFC is made between steps 3 and 4 of the sequential analysis. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity."); *see also Vorholt v. Commissioner*, 409 F. App'x 883, 886 (6th Cir. 2011).

*Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters*, 127 F.3d at 528. The court finds that the ALJ's factual findings regarding plaintiff's RFC and credibility are supported by more than substantial evidence.

It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Carrelli v. Commissioner*, 390 F. App'x 429, 438 (6th Cir. 2010) ("[I]t is 'well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.'") (quoting *Casey*, 987 F.2d at 1235). The VE does not determine a claimant's medical restrictions or how they impact on the claimant's residual functional capacity -- that is the ALJ's job. *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 247 (6th Cir. 1987). The ALJ, having found that plaintiff's subjective complaints were not fully credible, was not bound in any way by a VE's responses to hypothetical questions from the plaintiff's attorney incorporating a contrary assumption.

## Conclusion

For the reasons set forth herein, the Commissioner's decision will be affirmed.

Dated:   March 28, 2012          /s/  Joseph G. Scoville
                                 United States Magistrate Judge